# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24138-CIV-UNGARO

PEDIATRIC NEPHROLOGY
ASSOCIATES OF SOUTH FLORIDA,
ANSELMO CEPERO, M.D., and ANA PAREDES, M.D.,

    Plaintiffs,

v.

VARIETY CHILDREN'S HOSPITAL f/k/a
MIAMI CHILDREN'S HOSPITAL d/b/a
NICKLAUS CHILDREN'S HOSPITAL,
PEDIATRIC SPECIALTY GROUP, INC.,
FELIX RAMIREZ-SEIJAS, M.D.,
NARENDRA KINI, M.D., and LEONARD FELD, M.D.,

    Defendants.

_____/

## DECLARATION OF GEORGE MACCONNELL

I, George MacConnell, an more than twenty-one years of age, and am competent to present this Declaration in support of Plaintiffs' Response in Opposition to Defendants' Motion to Compel Production Documents on Plaintiffs' Privilege Log in the above entitled matter.

1. I previously submitted an affidavit in this case on March 2, 2017, when the Defendants were trying to argue for production of privileged documents from non-party Kidz Medical Services, Inc. ("Kidz"). The current affidavit supplements the prior one.

2. I am an attorney. I was admitted to the Florida Bar in April 1995 and am a member in good standing. I am also a Florida licensed Certified Public Accountant, since September 1994, and am in good standing.

1

3. I am the chief financial officer and in-house counsel for Kidz, and have been since I started work there in September 2002. In that connection, I regularly provide legal advice to Kidz, its directors, representatives and employees.

4. As set forth in my prior affidavit, I also serve as the chief financial officer of the Plaintiff in this case, Pediatric Nephrology Associates of South Florida (PNASF).

5. I am familiar with the facts underlying this lawsuit, and the claims that have been brought by the Plaintiffs against the Defendants. As set forth in the Plaintiffs' pleadings, Plaintiffs Dr. Paredes and Dr. Cepero are highly respected pediatric nephrologists who have practiced for more than two decades in an independent physician practice group at Nicklaus Children's Hospital. In the fall of 2015, when they declined to join the Hospital's newly formed in-house physician practice group (Defendant Pediatric Specialty Group, Inc. ("PSA")), the Hospital and its top administrators joined forces with the Plaintiffs' former partner, Dr. Ramirez, and launched an economic assault on the Plaintiffs' medical practice, with disregard for the significant business interest of PNASF, its partners, patients and employees.

6. PSA and Dr. Ramirez worked aggressively to establish a pediatric nephrology practice that would take patients from PNASF, by directly interfering with and exerting control over patient referrals. Through these efforts, the Defendants deceptively and fraudulently used proprietary business information of the Plaintiffs' partnership to recruit pediatric nephrologists to join the rival PSA practice group and Dr. Ramirez; they instructed, via their economic influence and control of medical office space, other PSA physicians to stop referring patients to the Plaintiffs, notwithstanding patterns that had been established for more than 20 years, and irrespective of the quality of and accessibility of patient care; they via their economic control and efforts to direct all revenue to PSA and Dr. Ramirez, abruptly terminated long established

2

teaching agreements with the Plaintiffs; they via their economic control refused to renew agreements for positions the Plaintiffs had long held at the Hospital, which remain vacant even now; and they via their economic control failed to pay the Plaintiffs for elected administrative positions they hold. All of these actions appear to me to be a retaliatory reaction to the decision by Drs. Paredes and Cepero to not join PSA, and an aggressive exercise to demonstrate the devastating economic impact that Defendants can and will cause on physicians who choose not to join their group, and follow their direction of referrals of patients.

7. As an additional example of retaliation and harassment against the Plaintiffs, the Hospital colluded with Dr. Ramirez to file a trumped-up eviction action in State Court, seeking to throw the Plaintiffs out of the space they had leased at the Hospital for decades, and give it to Dr. Ramirez and the doctor he and PSA had newly recruited to compete against and interfere with the Plaintiffs' practice.

8. The Hospital Defendants undertook these actions in blatant disregard of the medical needs of the Plaintiffs, their families, their employees, their support network of physicians – and their patients many of who are critically ill and have chronic conditions. Instead of ensuring that the Plaintiffs could devote their time, attention and resources to the treatment of those patients, the Hospital Defendants acted with what appeared to me to be a deliberate intent to disrupt and interfere with the Plaintiffs and their practice – in order to punish the Plaintiffs. I found this situation to be unconscionable, an abuse of the authority and duties of both the Hospital and Dr. Ramirez. I found the actions to be an aggressive attempt to overwhelm two physicians with 20 plus years of experience and dedication to the Hospital and Dr. Ramirez, and that their motivation was control and greed. I believed it was important for me, as an attorney, CPA, MBA with 40 years of business experience, with numerous years in the medical industry, and for Kidz

3

to assist the Plaintiffs in dealing with this horrible situation caused by the Hospital Defendants. For me, because the events as describe to me where complex, would involve multiple professionals careers, and would have a direct impact on the children being cared for by these two outstanding and dedicated physicians that it was necessary for me to provide legal advice for PNASF, Dr. Paredes and Dr. Cepero.

9. It was in the context of this developing situation – at a time of significant crisis to the Plaintiffs, who found themselves under the concerted attack and threats of the Hospital, PSA, and Dr. Ramirez – that Dr. Paredes and Dr. Cepero first came to talk to Kidz and to me.

10. From our initial meetings in or about late September or early October of 2015, I have been providing, and have continued to provide, legal advice to the Plaintiffs. At all times, I have understood my communications and advice to the Plaintiffs to be confidential, made with an expectation of privacy and confidentiality, and for purposes of providing legal advice. I recall on several occasions making these assertions to both Drs. Paredes and Cepero. Additionally, given the toxic circumstances created by the Hospital Defendants and their actions, as detailed in the Plaintiffs' pleadings and referenced by me above, all of my communications and conversations with the Plaintiffs, from the outset on, have been made in anticipation of potential litigation, during the threats of litigations, and throughout litigation and are protected under the work-product doctrine.

11. In addition to the legal advice I provided, I also agreed to serve in the role of CFO for the Partnership, and that position was formalized by a board resolution in March of 2016. I understand that the Hospital Defendants themselves have filed copies of that resolution, along with the communications I sent in that capacity to Dr. Ramirez and his administrator, Berta Esperon.

4

12. I understand that communications I was involved in as the CFO of the Partnership with Dr. Ramirez and Ms. Esperon are not privileged. No privilege claim has been asserted over those communications, and I have agreed to be available on reasonable notice for the Hospital Defendants to depose me in this case.

13. Also, in addition to my role as counsel and CFO, there is also a relationship between the Plaintiffs and Kidz. From my review of the Hospital Defendants' Motion, however, they mischaracterize the relationship.

14. First, PNASF continues to exist and operate as an entity, although Dr. Ramirez is no longer a partner. My understanding is that he was dissociated as a partner, based on his misconduct in the Fall of 2015, including breaching his fiduciary and other duties to the Partnership, interfering with the business interest of the Partnership and actively conspiring with the Hospital Defendants against and to the detriment of the Plaintiffs and their patients.

15. Second, Kidz has helped by providing administrative assistance to the Plaintiffs, including by providing financial management, billing services, staffing, and other services, particularly since Dr. Ramirez and his assistant Berta Esperon joined PSA, and left the Partnership with limited administrative and financial resources. The employment agreements between Kidz and Drs. Cepero and Paredes is one aspect of this structure, similar to the structure in which many corporations and even law firms use various administrative firms such as ADP to provide "Human Capital Management Services."

16. Third, the Plaintiffs and Kidz have joint and common interests in connection with the pending litigation and disputes between them and the Hospital Defendants. Indeed, as I mentioned above, among other examples, the Hospital Defendants have directed various legal

5

process against Kidz, such as the subpoena issued to Kidz in this action and the motion filed against Kidz, seeking to compel Kidz' production of privileged information.

17. These layers of the relationship create multiple privileges and protections between the parties, including but not limited to attorney-client privileges, work product protection, and joint and common interest privileges. In fact, these relationships and privileges are memorialized in a written Common Interest, Joint Defense & Confidentiality Agreement, between and among Kidz, PNASF, Dr. Cepero and Dr. Paredes.

18. I have reviewed myself the entries on the Plaintiffs' privilege log. It is my opinion that they are privileged and protected for the reasons set forth in this affidavit.

19. I have also reviewed the Motion to Compel filed by the Hospital Defendants, many assertions of which are simply inaccurate and either mischaracterize or ignore the facts and circumstances. Thus, the Motion inaccurately suggests that I only rendered legal advice to the Plaintiffs for a "three to four week" period beginning on March 8, 2016. Defendants simply mischaracterize statements made during depositions in a self-serving manner. As set forth above, I began rendering legal advice to the Plaintiffs in the Fall of 2015 and have continued to provide such advice to them to date.

20. The Motion also suggests that I may have provided "business advice, as opposed to legal advice" to the Plaintiffs, in my capacity as CPA. Of course, advice that I provided to the Plaintiffs as CPA would also privileged. But, as I explained above, to the extent I handled non-legal issues, for example in my role as CFO for the partnership, I am not asserting a privilege over that information, and I am prepared to answer questions on such topics at deposition.

21. Next, the Motion entirely mischaracterizes some of my communications, such as an April 4, 2016 email to Joseph Miles, counsel for the Hospital in the State Court Eviction

Action. Thus, I explained to Mr. Miles that I was "not the attorney representing the Defendants in th[at] litigation." At that juncture, I was assisting Plaintiffs with legal advice regarding the various assertions and harassment by Defendants wherein they selected Mr. Kaplan and his firm as counsel of record in that case. My role and experience is as in-house counsel; not outside litigation counsel, and I was very much aware of the need for Plaintiffs to secure competent litigation counsel after the aggressive actions taken by Defendants and Dr. Ramirez. Of course, the email never stated that I had stopped or was not providing legal advice to the Plaintiffs.

22. Similarly, my March 8, 2016 email to Ms. Esperon, Dr. Ramirez' assistant, responded to a request that I speak to Dr. Ramirez' counsel. My response stated my view that the situation at that time was straightforward – Dr. Ramirez had been dissociated and had no rights with respect to the Partnership. Thus, I did not believe there was any "legal issue" that needed to be discussed with his lawyer. Again, I never stated – or suggested – that I was not discussing legal issues internally with the Plaintiffs.

23. Additionally, the Hospital Defendants wrongly seek to invade the privilege between the Plaintiffs and two other in-house lawyers at Kidz, Meerali Patel and Tracy Burns. While labeling the Plaintiffs merely employees of Kidz does not accurately or fully describe the relationship, there is an employment relationship between them as part of the broader set of administrative services Kidz' provides for the Plaintiffs. Thus, there is a direct privilege between Ms. Patel and Ms. Burns and the Plaintiffs. Additionally, these communications are subject to the common interest between Kidz and the Plaintiffs.

24. The Hospital Defendants also mischaracterize the role of other Kidz personnel in communicating with the Plaintiffs. As indicated on the privilege log, I requested certain of my staff – on my behalf – to exchange information with the Plaintiffs. That was done in the context

7

of, and to assist with, the communications and legal advice I was providing them – just as support staff at a law firm might communicate on behalf of a lawyer with a client. Mr. Quattrocchi – who works under my direction as an office manager at Kidz – exchanged such communications, as well as Irene Navarro and Carlos Marban who provide administrative assistance for me.

25. I reiterate that the documents listed on the Plaintiffs' privilege log are and remain privileged and confidential, protected by the attorney-client privilege, the work product doctrine and/or the common interest privilege as indicated.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this 18th day of May, 2017.

_____
George MacConnell